# EXHIBIT 1

Frank J. Polek, SBN 167852
POLEK LAW
3033 Fifth Avenue, Suite 400
San Diego, California 92103
619-550-2455
619-274-8166 (fax)
frank@poleklaw.com

Attorney for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

STANLEY MOSK COURTHOUSE

| | |
|---|---|
| SALOMES MONIK RENGIFO JACKSON and JONATHAN ANTISTIAN RENGIFO JACKSON, as Co-Personal Representatives of the Estate of GISELLE ANTISTIANA JACKSON RENGIFO, deceased; and, CATHERINE JACKSON, individually; and ANTISTENES RENGIFO ESTUPINAN, individually, <br><br> Plaintiffs, <br><br> v. <br><br> AIRBNB, INC., a Delaware corporation; SNAP, INC., a Delaware corporation, d/b/a in California as Snapchat, Inc.; and DOES 1-25, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** |

Plaintiffs, SALOMES MONIK RENGIFO JACKSON and JONATHAN ANTISTIAN RENGIFO JACKSON, as Co-Personal Representatives of the Estate of GISELLE ANTISTIANA JACKSON RENGIFO, deceased; CATHERINE JACKSON, individually, and ANTISTENES RENGIFO ESTUPINAN, individually, and files this Complaint against Defendant, AIRBNB, Inc.; Defendant SNAP, INC. d/b/a Snapchat, Inc.; and DOES 1-25, and allege as follows:

COMPLAINT FOR DAMAGES

- 1 -

## JURISDICTION AND PARTIES

1. This action is brought pursuant to the California Wrongful Death statute California Code of Civil Procedure §377.60, and California Code of Civil Procedure §377.20 & §377.30-35. This is a civil action against AIRBNB, Inc. in which Plaintiffs assert claims for negligence, gross negligence, and punitive damages for the wrongful shooting death of a minor in an AIRBNB rental property in Florida on May 18, 2020. This is also a civil action against SNAP, INC. in which Plaintiffs assert claims for negligence, gross negligence, and punitive damages against SNAP, INC. for its mobile phone application known as Snapchat for the unlawful sale of firearms to minors.

2. Plaintiffs, SALOMES MONIK RENGIFO JACKSON and JONATHAN ANTISTIAN RENGIFO JACKSON, have been duly appointed as Co-Personal Representatives of the Estate of GISELLE ANTISTIANA JACKSON RENGIFO, deceased, who at all times was a minor.

3. Plaintiff CATHERINE JACKSON, brings the action in her individual capacity and is the natural mother and next of kin of GISELLE ANTISTIANA JACKSON RENGIFO, deceased, a minor.

4. Plaintiff ANTISTENES RENGIFO ESTUPINAN, brings the action in his individual capacity and is the natural father and next of kin of GISELLE ANTISTIANA JACKSON RENGIFO, deceased, a minor.

5. Defendant, AIRBNB, INC., is a for profit corporation open and operating in both California and Florida. Defendant AIRBNB's corporate headquarters is located in San Francisco County, California.

6. Defendant SNAP, INC., is a for profit corporation open and operating in both California and Florida. Defendant SNAP, INC.'s corporate headquarters is located in Los Angeles County, California.

7. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 25, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs allege that DOES 1 through 25 are in some way responsible for Plaintiffs'

1. damages. Plaintiffs will amend this Complaint to allege the true names and capacities, if and when they are ascertained.

8. Venue is proper in this judicial district because at least one defendant resides in this district.

## FACTUAL ALLEGATIONS

9. On or about May 18, 2020, seventeen-year-old Giselle Jackson Rengifo was an invitee and guest at an AIRBNB rental property located at 2721 Southwest 20th Street, Miami-Dade County, Florida, the subject premise. The subject premise was owned by Kip Matthew Desormeaux who listed the subject property for rent on AIRBNB. Seventeen-year-old Michael McGowan was also a guest and invitee on the subject premise. On May 18, 2020, Michael McGowan shot and killed Giselle Jackson Rengifo using a gun he purchased on Defendant SNAP, INC.'s "Snapchat" platform.

10. On May 18, 2020, while located on the subject premise, Michael McGowan had in his possession, custody, and control a firearm—to wit: a Bersa Thunder 40 UL CT Pro 40 caliber pistol (Serial number H64141). Michael McGowan had been staying at the subject property with other minors, partying with minors, openly engaging in criminal activity including drug activity and alcohol consumption by minors, and maintaining weapons including the firearm on the subject property for several days leading up to the subject incident. As such, the shooting death of Giselle Jackson Rengifo was preventable and foreseeable.

## AIRBNB Liability

11. Defendant AIRBNB created, distributed, and maintains mobile technology products and services that were a cause of the death of Giselle Jackson Rengifo. Defendant AIRBNB created a dangerous product "AIRBNB," a platform and business that has for years, repeatedly and foreseeably caused the criminal activity and the killing of innocent persons, so much so that it has its own "black box" security team.

12. The unlawful criminal activity, use of drugs, presence of weapons, and leaving minors unsupervised on AIRBNB properties provides no social benefit would be banned/ prohibited/and prevented with no meaningful cost as suggested by AIRBNB employees.

COMPLAINT FOR DAMAGES

13. AIRBNB has an online platform wherein persons can list their property as a vacation rental with the platform and users can rent the property by making reservations, paying, and chatting through the online platform. The AIRBNB online platform contains information about the listing, pricing, pictures, information related to safety and security concerns, information about the property owner, information about the renter and provides the renter's profile, accepts payment for the rental, issues refunds when necessary, and provides a messaging platform for the renter and rentee. AIRBNB's products allow users to create, upload, post, send, receive, share, and store digital content. Defendant AIRBNB provides a platform wherein AIRBNB hosts constantly interact and communicate with guests, guests can report issues for resolution directly to AIRBNB, and AIRBNB otherwise manages the guests stay on the subject property through the time of checkout.

14. Prior to May 18, 2020, AIRBNB created and distributed the AIRBNB app and/or platform that allowed users to rent vacation properties and commit crimes on the subject property.

15. On or before May 18, 2020, AIRBNB knew or should have known that it was motivating, incentivizing, or otherwise encouraging its users to violate the law, that the properties could be used commit criminal activity, that persons could be present on the property with unlawful guns, that minors may not be supervised, and/or the property could be used to shoot and kill persons. Specifically, AIRBNB knew or should have known that, prior to May 18, 2020, that many of its users have been committing crime and/or have been the victims of unlawful criminal activity that has caused the death of guests and invitees on AIRBNB properties

16. AIRBNB also has knowledge that many of the tenants on its properties were minors and under the age of eighteen.

17. Regardless of whether AIRBNB intended to encourage criminal activity through its platform, AIRBNB knew or should have known that it was, in fact, encouraging criminal activity due to its negligent design, making it reasonably foreseeable that AIRBNB would continue to motivate users to rent AIRBNB properties to engage in criminal activity.

COMPLAINT FOR DAMAGES

- 4 -

18. AIRBNB had a tremendous amount of prior notice that crimes are frequently committed on its subject properties and notice that it created an unreasonable risk of harm to guests and invitees and the public based on the following examples.

19. In 2015 a woman was raped at knife point at an AIRBNB property in New York.

20. In California, a guest rented an AIRBNB and hosted a Halloween house party, at which five people were shot.

21. In 2017 AIRBNB employees submitted a proposal in 2017 for making the platform safer for both hosts and guests, suggesting that everyone that signs up for the platform should have to provide a government identification such as a driver's license to deter bad actors because crime is so prevalent on AIRBNB properties. AIRBNB declined to improve the safety standards as recommended by their employees to ensure they did not reduce their profit margin- at the expense of lives.

22. Northeastern University reviewed data in Boston from 2011 to 2018, a period of both sustained growth in AIRBNB listings and growing concerns about crime. The review concluded that certain violent crimes tended to increase in a neighborhood a year or more after the number of AIRBNB listings increased.

23. Crime is so foreseeable at AIRBNB properties that it pays an "elite trust-and-safety team" to cover up the crimes, according to a *Bloomberg* investigation. The elite security department, known internally as the "black box" for its secrecy, is made up of about 100 agents distributed in various cities around the world. Many of them have military and emergency services training or are former members of high-level security forces. The crisis department is also in charge of hiring specialized teams to clean the blood on walls, carpets and furniture, or contractors to repair damage to the property such as bullet holes, as well as services to dispose of human remains.

24. AIRBNB is abundantly aware of incessant criminal activity taking place in all areas of its operations and could have improved safety measures to have prevented the death of Giselle Jackson Rengifo.

25. In spite of all the known dangers, AIRBNB negligently designed its platform to

ensure the safety of invitees on AIRBNB properties.

26. The negligent product design claim rests on the premise that manufacturers have a duty to exercise due care in supplying products that do not present an unreasonable risk of injury or harm to the public.

27. Thus, a negligent design action asks whether a reasonable person would conclude that "the reasonably foreseeable harm" of a product, manufactured in accordance with its design, outweighs the utility of the product.

28. Defendant AIRBNB as a products manufacturer negligently designed the AIRBNB platform (or the product) with a defect; namely, the failure to undertake reasonable safety measures to prevent crime and/or severe personal injury and death. AIRBNB failed to take reasonable measures to design a product more useful than it was foreseeably dangerous.

29. In the instant matter, AIRBNB had clear notice of its design defect by the numerosity of crimes committed on AIRBNB properties, AIRBNB created an elite security team called "black box" to respond to crime scenes at its properties, independent citizen reviews of the product like the data obtained from Northeastern University, and due to the feedback from its own employees.

30. AIRBNB also owed decedent several duties to decedent as an operator/manager of the subject property but breached those duties by its actions and omissions thereby exposing Giselle Jackson Rengifo to foreseeable danger.

31. Defendant AIRBNB failed to ensure the AIRBNB properties were maintained in a reasonably safe condition, including but not limited to ensuring that AIRBNB rental properties are in compliance with state law and local ordinances and policies; failing to prevent criminal activity; failing to ensure persons do not bring guns and weapons onto subject properties; and failing to promulgate a written policy requiring guests not to leave the property rental in the possession of minors.

32. Furthermore, AIRBNB repeatedly refused to require renters to provide photo identification or submit to a background check through its platform prior to renting a subject property despite being advised to do so by its own security professionals and employees.

33. AIRBNB does not visibly post warnings against bring weapons onto its rental properties or forbid engaging in criminal behavior on its website or require said verbiage in its listings.

34. AIRBNB did not require owners to promulgate any rules and/or recommend that the owners promulgate rules on the subject property prohibiting the consumption of drugs, prohibiting the consumption of alcohol by minors, prohibiting firearms and/or weapons, prohibiting criminal activity, and/or prohibiting the property from being occupied by minors without adult supervision.

35. Moreover, Defendant AIRBNB did not require the property owner to monitor the subject property to ensure that it was not being utilized for the consumption of drugs, the consumption of alcohol by minors, for illegal activity involving firearms and/or weapons, criminal activity, and/or to ensure it was not occupied by minors without adult supervision. In general, AIRBNB failed to take reasonable measures to prevent crimes including the killing of persons. In fact, criminal activity, drug use, and violent activity, regularly occurs on Defendant AIRBNB properties as alleged above.

36. AIRBNB had a tremendous amount of prior notice that crimes are frequently committed on their subject properties, making the shooting of Giselle Jackson Rengifo foreseeable.

## SNAPCHAT

37. Defendant SNAP, INC. created, distributed, and maintains mobile technology products and services that were a direct and proximate cause of the death of Giselle Jackson Rengifo.

38. Defendant SNAP created a grossly dangerous product "Snapchat" a platform that has for years, repeatedly and foreseeably caused the unlawful sale of guns, the unlawful sale of guns to minors, and trafficking in arms, so much so that SNAP, has been investigated by the ATF.

39. The unlawful sale of guns provides no social benefit and the unlawful sale of guns and/or the sale of guns and/or weapons would be banned/prohibited/and prevented with no meaningful cost.

40. SNAP is a social media company that supplies consumers with products focused on mobile photos and videos. SNAP's products allow users to create, upload, post, send, receive, share, and store digital content. SNAP's primary social media product is its mobile application, Snapchat, which in turn has numerous products and features contained within it. SNAP users often upload items for sale.

41. For some time before May 18, 2020, SNAP created and distributed the Snapchat app, a feature that allowed users to engage in the unlawful sale and purchase of guns.

42. On or before May 18, 2020, SNAP knew or should have known that it was motivating, incentivizing, or otherwise encouraging its users to sell firearms in violation of the law, and that those guns could be used to commit criminal activity and/or to shoot and kill persons.

43. Specifically, SNAP knew or should have known that, prior to May 18, 2020, that many of its users have been unlawfully selling and purchasing guns, including selling guns to minors.

44. SNAP also has knowledge that many of its users were minors and under the age of eighteen.

45. Regardless of whether SNAP intended to encourage the unlawful sale of guns and weapons through its platform, SNAP knew or should have known that it was, in fact, encouraging the unlawful sale of firearms and that due to its negligent design it was reasonably foreseeable that Snapchat would continue to motivate uses to sell and purchase guns and weapons.

46. SNAP had a tremendous amount of prior notice that crimes are frequently committed by and through gun sales taking place via Snapchat and notice that it created an unreasonable risk of harm to its users and the public based on the following examples.

COMPLAINT FOR DAMAGES

- 8 -

47. In 2018 the ATF investigated a gun trafficking ring in Nevada. Between January and November of 2018, undercover agents purchased 35 firearms and spent more than $30,000.00 on guns sold through Snapchat. Over the course of the year-long investigation, federal prosecutors wrote in court documents that one individual "constantly posted videos and photos of firearms to his Snapchat account." According to an article in *The Guardian*, "Overall, prosecutors and ATF agents suspect the gun trafficking ring sold well over 100 firearms in the Bay Area. Many customers were people with felony conviction records prohibiting them from possessing a gun. Some weapons were used to commit armed robberies, assaults, and murders."

48. Prosecutors throughout the country have identified that arms traffickers use Snapchat to market weapons. There are several other cases of persons selling firearms on Snapchat, including a 31year old man who was arrested last year for allegedly smuggling guns from Georgia to Connecticut and advertising the weapons for sale on Snapchat.

49. A 17-year-old New Mexico resident was arrested by the FBI in June 2018 for allegedly selling firearms, including assault rifles, through a Snapchat account.

50. Although Snapchat officially prohibits advertising firearms, the platform is frequently used by gun traffickers according to Federal authorities in the FBI and ATF. According to authorities the arms traffickers, "use these methods to arrange the sales of guns and drugs, set quantities and prices, meeting places." SNAP clearly had notice of the above-referenced incidents as a spokesperson for Snapchat responded to an inquiry about how it handles gun sales and stated that SNAP, INC.'s general company policies regarding prohibited content

51. SNAP is also aware that guns are trafficked over the Snapchat platform in various parts of the world, including in the United Kingdom. In 2019, the magazine VICE UK found evidence of handguns, automatic rifles and ammunition being advertised for sale from an account based in London, to an audience of predominantly young people via Snapchat. The account used Snapchat's story feature to advertise numerous guns. Again, SNAP clearly had knowledge of the safety concerns as a spokesperson for Snapchat told VICE UK: "SNAP is deeply committed to the safety of our community, and our terms of service and our community

guidelines prohibit anyone from using Snapchat for illegal activity....The design of Snapchat encourages users to interact with their real friends and not strangers"... "We encourage anyone who sees illegal content to report it. Our in-app reporting tools are quick and easy to use and our dedicated Trust and Safety team is on hand 24/7 to respond." After the VICE UK article, Snapchat removed the account of the person trafficking arms.

52. The sale of illegal goods is in clear violation of Snapchat's community guidelines, which state users should not "use Snapchat for any illegal activities – including to buy or sell illegal weapons." As SNAP issues community safety guidelines and prohibits the sale of firearms it has undertaken a duty to take reasonable measures to prevent the sale of firearms and/or to prevent the sale of firearms to minors to ensure the safety of the general public but has failed to design Snapchat in a way that prevents the sale of illegal firearms to keep the public safe and/or has failed to properly monitor the in-app reporting tools and/or to remove or disable accounts of persons selling firearms.

53. SNAP is abundantly aware of incessant criminal activity taking place in all areas of its operations and could have improved safety measures to have prevented Giselle's death.

54. SNAP had a duty to exercise due care in supplying products that do not present an unreasonable risk of injury or harm to the public. A reasonable person would conclude that the reasonably foreseeable harm of a product, manufactured in accordance with its design, outweigh[s] the utility of the product.

55. In the instant matter, SNAP had clear notice of its design defect by the numerosity of crimes committed as a result of illegal gun trafficking occurring on Snapchat, the investigations conducted by the ATF and FBI into arms trafficking on Snapchat, the work of the investigative journalist who reported on gun sales via Snapchat, and from its own spokespersons who acknowledged that Snapchat aims to eliminate the sale of firearms to keep the public safe and even established a "Safety" reporting feature. SNAP has clearly failed to design Snapchat in a way that identifies when photos of guns and/or guns are being advertised for sale and disables accounts engaging in advertising and/or selling guns. When users create an account on

the platform, they are not required to sign an agreement not to advertise the sale of guns and/or are forbidden from selling guns to minors using Snapchat.

## CAUSATION AND DAMAGES

56. Defendant AIRBNB and Defendant SNAP, INC.'s negligence actually and proximately caused the tragic and untimely death of Giselle Jackson Rengifo, and actually and proximately caused Plaintiff ANTISTENES RENGIFO ESTUPINAN and Plaintiff CATHERINE JACKSON the loss of their minor daughter. As such, Defendants are liable for Plaintiffs injuries and damages.

57. Plaintiffs, SALOMES MONIK RENGIFO JACKSON and JONATHAN ANTISTIAN RENGIFO JACKSON, as Co-Personal Representatives of the Estate of GISELLE ANTISTIANA JACKSON RENGIFO, deceased, hereby make a claim on behalf of the Estate pursuant to California Code of Civil Procedure §§ 377.20 & 377.30-35, for damages including but not limited to the following:

    a. The loss or damage that decedent Giselle Jackson Rengifo would have sustained or incurred prior to the death, physical pain and suffering, and emotional pain and suffering;

    b. The penalties or punitive or exemplary damages that the decedent Giselle Jackson Rengifo would have been entitled to recover had decedent lived;

    c. Medical bills and funeral expenses and burial expenses;

    d. Loss of earnings and loss of prospective net accumulations;

    e. Any and all costs and attorneys' fees associated with this action, to the extent recoverable by law; and,

    f. Any and all other and further relief as this Court may deem appropriate.

58. Plaintiff ANTISTENES RENGIFO ESTUPINAN and Plaintiff CATHERINE JACKSON, the surviving parents of GISELLE ANTISTIANA JACKSON RENGIFO, are the statutory survivors of decedent and have suffered and will continue to suffer into the future emotional pain and suffering due to the death of their minor daughter, Giselle Antistiana

Jackson Rengifo, deceased, and hereby bring this claim for damages pursuant to California Code of Civil Procedure § 377.60, including but not limited to the following:

    a. The financial support that Giselle Antistiana Jackson Rengifo would have contributed to the family during her life expectancy;

    b. The Giselle Antistiana Jackson Rengifo loss of gifts or benefits that Plaintiffs would have expected to receive from decedent;

    c. Funeral and burial expenses;

    d. The reasonable value of household services that Giselle Antistiana Jackson Rengifo would have provided;

    e. The loss of Giselle Antistiana Jackson Rengifo's love, companionship, comfort, care, assistance, protection, affection, society, moral support;

    f. The loss of Giselle Antistiana Jackson Rengifo's training and guidance;

    g. Any and all costs and attorneys' fees associated with this action, to the extent recoverable by law; and,

    h. Any and all other and further relief as this Court may deem appropriate.

## FIRST CAUSE OF ACTION

### (For Negligence—Against Defendant AIRBNB and Does 1-25)

59. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

60. Defendant AIRBNB owed a duty of care to Plaintiffs and their decedent.

61. Defendant AIRBNB breached that duty of care to Plaintiffs and their decedent as alleged above.

62. As a direct and proximate result of Defendant AIRBNB's breach of the duty of care to Plaintiffs and their decedent, Plaintiffs suffered damages as alleged above.

63. Defendant AIRBNB's negligence was a substantial factor in causing Plaintiff's damages.

64. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

## SECOND CAUSE OF ACTION

### (For Gross Negligence—Against Defendant AIRBNB and Does 1-25)

65. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

66. Defendant AIRBNB owed a duty of care to Plaintiffs and their decedent.

67. Defendant AIRBNB breached that duty of care to Plaintiffs and their decedent as alleged above.

68. As a direct and proximate result of Defendant AIRBNB's breach of the duty of care to Plaintiffs and their decedent, Plaintiffs suffered damages as alleged above.

69. Defendant AIRBNB's negligence was a substantial factor in causing Plaintiff's damages.

70. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

71. Defendant AIRBNB's willful misconduct, wantonness, or entire want of care raising the presumption of conscious indifference to the consequences, Plaintiffs seek punitive damages in order to penalize, punish, or deter AIRBNB's future misconduct. In particular, AIRBNB's actual knowledge of prior crimes on its properties including deaths and rapes, a conscious disregard of its own employees recommendations to improve safety, a conscious disregard of Northeastern University's research into the proclivity for criminal activity on its properties, and the acknowledgement of the numerosity and propensity of crime on its properties as evident by the formation of its "black box" crime team, and other knowledge of the danger will be evidence of justifying an award of punitive damages.

## THIRD CAUSE OF ACTION

### (For Products Liability—Against Defendant AIRBNB and Does 1-25)

72. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

73. Defendant AIRBNB designed, manufactured, and/or supplied its Airbnb platform.

74. Defendant AIRBNB was negligent in designing, manufacturing and/or supplying its Airbnb platform.

75. As a direct and proximate result of Defendant AIRBNB's negligence in designing, manufacturing and/or supplying the Airbnb platform, Plaintiffs were harmed as alleged above.

76. Defendant AIRBNB's negligence was a substantial factor in causing Plaintiff's damages.

77. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

**FOURTH CAUSE OF ACTION**

**(For Negligence—Against Defendant SNAP, INC. and Does 1-25)**

78. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

79. Defendant SNAP, INC. owed a duty of care to Plaintiffs and their decedent.

80. Defendant SNAP, INC. breached that duty of care to Plaintiffs and their decedent as alleged above.

81. As a direct and proximate result of Defendant SNAP, INC.'s breach of the duty of care to Plaintiffs and their decedent, Plaintiffs suffered damages as alleged above.

82. Defendant SNAP, INC.'s negligence was a substantial factor in causing Plaintiff's damages.

83. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

**FIFTH CAUSE OF ACTION**

**(For Negligent Undertaking—Against Defendant SNAP, INC. and Does 1-25)**

84. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

85. Defendant SNAP, INC. rendered services to its customers, including but not limited to, the sale of firearms.

86. Those services were of a kind that Defendant SNAP, INC. should have recognized that Plaintiffs and/or their decedent would need protection.

87. Defendant SNAP, INC. failed to exercise reasonable care in rendering those services.

COMPLAINT FOR DAMAGES

- 14 -

88. Defendant SNAP, INC.'s failure to exercise reasonable care was a substantial factor in causing harm to Plaintiffs.

89. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

## SIXTH CAUSE OF ACTION

**(For Gross Negligence—Against Defendant SNAP, INC. and Does 1-25)**

90. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

91. Defendant SNAP, INC. owed a duty of care to Plaintiffs and their decedent.

92. Defendant SNAP, INC. breached that duty of care to Plaintiffs and their decedent as alleged above.

93. As a direct and proximate result of Defendant SNAP, INC.'s breach of the duty of care to Plaintiffs and their decedent, Plaintiffs suffered damages as alleged above.

94. Defendant SNAP, INC.'s negligence was a substantial factor in causing Plaintiff's damages.

95. Defendant SNAP, INC.'s willful misconduct, wantonness, or entire want of care raising the presumption of conscious indifference to the consequences, Plaintiffs seek punitive damages in order to penalize, punish, or deter SNAP, INC.'s future misconduct. In particular, SNAP, INC.'s actual knowledge that guns were being sold on Snapchat, including to criminals and minors, and other knowledge of the danger will be evidence of justifying an award of punitive damages.

## SEVENTH CAUSE OF ACTION

**(For Products Liability—Against Defendant SNAP, INC. and Does 1-25)**

96. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

97. Defendant SNAP, INC. designed, manufactured, and/or supplied its Snapchat platform.

98. Defendant SNAP, INC. was negligent in designing, manufacturing and/or supplying its Snapchat platform.

99. As a direct and proximate result of Defendant SNAP, INC.'s negligence in designing, manufacturing and/or supplying the Snapchat platform, Plaintiffs were harmed as alleged above.

100. Defendant SNAP, INC.'s negligence was a substantial factor in causing Plaintiff's damages.

101. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

## EIGHTH CAUSE OF ACTION

### (For Negligence Per Se—Against Defendant SNAP, INC. and Does 1-25)

102. Plaintiffs incorporate paragraphs 1 through 58 as if fully stated herein.

103. Florida and California law expressly prohibits the sale of arms to minors.

104. Defendant SNAP, INC. had a duty to prevent the sale of guns to minors over its platform.

105. Snapchat does not require users to sign an agreement prior to creating an account stating that users will not advertise for sale or engage in the act of selling guns or illegal firearms, and/or that users will not advertise for sale or engage in the act of selling guns or illegal firearms to minors.

90. As a direct and proximate result of Defendant SNAP, INC.'s violations of the law, Plaintiffs suffered damages as alleged above.

91. Defendant SNAP, INC.'s violations of the law were a substantial factor in causing Plaintiff's damages.

92. Therefore, Plaintiffs are entitled to an award of damages as alleged above to compensate them for their losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, SALOMES MONIK RENGIFO JACKSON and JONATHAN ANTISTIAN RENGIFO JACKSON, as Co-Personal Representatives of the Estate of GISELLE ANTISTIANA JACKSON RENGIFO, deceased, hereby request that the Court make an award for damages to the Estate for wrongful death, including but not limited to:

1. Compensatory damages;
2. Medical and funeral expenses;
3. Loss of earnings;
4. Loss of prospective net accumulations;
5. Emotional pain and suffering;
6. Physical pain and suffering;
7. Punitive damages;
8. Attorneys' costs and fees, to the extent recoverable by law; and
9. Such other and further relief as this Court deems just and proper.

Plaintiff ANTISTENES RENGIFO ESTUPINAN and Plaintiff CATHERINE JACKSON, the surviving parents of GISELLE ANTISTIANA JACKSON RENGIFO, have suffered and will continue to suffer into the future emotional pain and suffering due to the death of their minor daughter, GISELLE ANTISTIANA JACKSON RENGIFO, deceased, and hereby request this Court award damages including but not limited to:

    a. The financial support that Giselle Antistiana Jackson Rengifo would have contributed to the family during her life expectancy;

    b. The Giselle Antistiana Jackson Rengifo loss of gifts or benefits that Plaintiffs would have expected to receive from decedent;

    c. Funeral and burial expenses;

    d. The reasonable value of household services that Giselle Antistiana Jackson Rengifo would have provided;

    e. The loss of Giselle Antistiana Jackson Rengifo's love, companionship, comfort, care, assistance, protection, affection, society, moral support;

    f. The loss of Giselle Antistiana Jackson Rengifo's training and guidance;

    g. Any and all costs and attorneys' fees associated with this action, to the extent recoverable by law; and,

    h. Any and all other and further relief as this Court may deem appropriate.

```
1  Dated: May  5 , 2022                    POLEK LAW
2
3
                                       By: Frank J. Polek
4                                          Frank J. Polek
                                           Attorney for Plaintiffs
5
6                              JURY TRIAL DEMAND
7      Plaintiffs demand trial by jury on all causes of action properly triable to a jury.
8  Dated: May  5 , 2022                    POLEK LAW
9
10
11                                     By: Frank J. Polek
                                           Frank J. Polek
12                                         Attorney for Plaintiffs
```