UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOMES MONIK RENGIFO JACKSON and JONATHAN ANTISTIAN RENGIFO JACKSON, as Co-Personal Representatives of the Estate of GISELLE ANTISTIANA JACKSON RENGIFO, deceased; CATHERINE JACKSON, individually; and ANTISTENES RENGIFO ESTUPINAN, individually,<br>　　　Plaintiff,<br><br>　　　　　　v.<br><br>AIRBNB, INC., a Delaware Corporation; SNAP, INC., a Delaware corporation, d/b/a in California as Snapchat, Inc.; and DOES 1-25,<br>　　　Defendant. | CV 22-3084 DSF (JCx)<br><br>ORDER GRANTING SNAP, INC.'S TO DISMISS (Dkt. 14) |

　　Snap, Inc. moves to dismiss the claims of Salomes Monik Rengifo Jackson and Jonathan Antistian Rengifo Jackson, as Co-Personal Representatives of the Estate of Giselle Antistiana Jackson Rengifo; Catherine Jackson, and Antistenes Rengifo Estupinan. Plaintiffs allege claims of negligence, negligent undertaking, gross negligence, products liability, and negligence per se against Snap.

　　For the reasons stated below Snap's motion to dismiss is GRANTED.

## I. Background

On May 18, 2020, seventeen-year-old Michael McGowan shot and killed seventeen-year-old Giselle Jackson Rengifo (Decedent) with a gun he purchased on Snapchat. Dkt 1-1 (Compl.) ¶ 9. Snapchat is a Snap social media platform that allows "users to create, upload, post, send, receive, share, and store digital content." Id. ¶¶ 38-40.

## II. Discussion

Snap moves to dismiss the claims, arguing that they are barred by Section 230 of the Communications Decency Act (CDA or Section 230). The Court agrees.

The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA preempts any state law that "is inconsistent" with the statute. 47 U.S.C. § 230(e)(3). A court should resolve Section 230 immunity at the early stages of litigation because the statute "protect[s] websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1175 (9th Cir. 2008).

### A.   The Barnes Test

The Ninth Circuit has developed a three-prong test, known as the Barnes test, for determining whether there is Section 230 immunity. "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider. When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed.'" Dyroff v. Ultimate Software Grp., Inc., 934 F.3d 1093, 1097 (9th Cir. 2019) (quoting Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100, 1100-01 (9th Cir. 2009). All three prongs are met here.

Plaintiffs do not dispute the first prong. Snap is clearly "a provider of an interactive computer service." Dkt. 20 (Opp'n) at 6.

To analyze the second prong—whether a party is being treated as a publisher or speaker—a court looks "to what the duty at issue actually requires: specifically, whether the duty would necessarily require an internet company to monitor third-party content." HomeAway.com, Inc. v. City of Santa Monica, 918 F.3d 676, 682 (9th Cir. 2019). Here the duty would necessarily require monitoring third-party content. Plaintiffs allege that Snap "clearly failed to design Snapchat in a way that identifies when photos of guns and/or guns are being advertised for sale" and fails to "disable[] accounts engaging in advertising and/or selling guns." Compl ¶ 55. Identifying content of social media users requires monitoring third-party content. Plaintiffs are clearly seeking to treat Snap as a speaker or publisher.

The third prong is met because the information was provided by another information content provider. Plaintiffs allege that McGowan purchased the gun "on Defendant SNAP, INC.'s 'Snapchat' platform." Compl. ¶ 9. Although they never specify from whom McGowan purchased the gun or the details of that transaction, the allegations clearly center on third parties selling the guns. See, e.g., id. ¶¶ 40-43 (claiming Snap is negligent because of activity on the platform such as "users often upload[ing] items for sale" including guns, "allowing users to engage in the unlawful sale and purchase of guns," and "users have been unlawfully selling and purchasing guns"). Plaintiffs never assert that Snap materially contributed to the content concerning the gun sale. There are no allegations that Snap sold the gun to McGowan, that Snap posted the gun itself, that Snap required that content to be posted, that Snap suggested that type of content, or any like accusation. Dyroff, 934 F.3d at 1099 (analyzing prong 3, "Plaintiff is unable to allege that Ultimate Software materially contributed to the content posted on Experience Project that led to Greer's death. Plaintiff cannot and does not plead that Ultimate Software required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts. Ultimate Software is entitled to immunity

3

under the plain terms of Section 230 and our case law as a publisher of third-party content.").

### B. The Lemmon Case

Plaintiffs rely on Lemmon v. Snap, Inc., 995 F.3d 1085 (9th Cir. 2021) in which the circuit recently found Section 230 immunity inapplicable. But the facts here are different and warrant a different result. In Lemmon, the Ninth Circuit found that Snap was not a publisher or speaker because the "claim turn[ed] on Snap's design of Snapchat." Id. at 1091. The claim was based on a filter that Snapchat designed called the "Speed Filter," which "encouraged its users to pursue certain unknown achievements and rewards." Id. The filter and incentive system "worked in tandem to entice young Snapchat users to drive at speeds exceeding 100 MPH." Id. at 1091-92. The users then are able to post photos or videos on Snapchat. The second prong was not met because the alleged duty in the case had nothing to do with "editing, monitoring, or removing of the content that its users generate through Snapchat." Id. at 1092. Rather Snap could fulfill its duty and resolve the issue by changing its own speed filter.

The circuit also held that the third prong of the CDA liability test was not met because the issue was Snap's "own internet content," not content of a third party. Id. at 1093. As the amended complaint in Lemmon conceded: "'Obviously no one is harmed by the post.'" Id. (quoting Amended Complaint ¶ 14, Lemmon v. Snap, Inc., CV 19-4504-MWF (KSx) (C.D. Cal. Nov. 18, 2019), ECF No. 47). This statement reinforced the circuit's reading of the Parents' negligent design claim as standing independently of the content that Snapchat's users create. The harm could occur even if the photo or video was not shared because the allegation was that individuals were incentivized by the filter to drive at unsafe speeds. Id.

In contrast to the accused negligence in <u>Lemmon</u>, the claims here are predicated on holding Snap liable for third party content posted on its platform. Plaintiffs try to avoid Section 230 immunity, insisting, in the <u>Lemmon</u> lingo, that they are seeking to hold Snap liable for Snap's actions and negligent design. Opp'n at 6-7. But no matter how it is dressed up, the negligent design claim is just a claim that Snap did not properly monitor and curb third-party content on its platform. The complaint makes this clear. The allegations of negligence are based on "users often upload[ing] items for sale." Compl. ¶ 40. The blame cast on Snapchat is not that any particular feature encouraged the sale of guns, but rather that the app "allowed users to engage in the unlawful sale and purchase of guns" and that Snap "knew or should have known" that "many of its users have been unlawfully selling and purchasing guns." <u>Id.</u> ¶¶ 41-43; <u>see also</u> <u>id.</u> ¶ 46 (Snap "had a tremendous amount of prior notice that crimes are frequently committed by and through gun sales taking place via Snapchat" and "arms traffickers use Snapchat to market weapons").

The accusation here is fundamentally that Snap should have monitored and curbed third-party content. The "policy of section 230 is to avoid" the chilling of speech "by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery." <u>Doe v. Internet Brands, Inc.</u>, 824 F.3d 846, 852 (9th Cir. 2016). This is exactly the sort of case for which Section 230 provides an impenetrable shield.

* * *

For the foregoing reasons, Snap's motion to dismiss is GRANTED. Plaintiffs are granted leave to amend in conformity with this Order if they can do so consistent with Rule 11 of the Federal Rules of Civil Procedure. An amended complaint may be filed and served no later than December 6, 2022. Failure to file an amended

complaint by that date will waive Plaintiffs' right to do so and the complaint will be dismissed with prejudice as to Snap, Inc. If Plaintiffs file an amended complaint, they must provide a redlined version of the amended complaint to the Court's generic chambers email.

   IT IS SO ORDERED.

Date: November 4, 2022

                                              *Dale S. Fischer*
Dale S. Fischer
United States District Judge