## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOMES MONIK RENGIFO JACKSON, et al., <br>     Plaintiffs, <br><br>           v. <br><br> AIRBNB, INC., a Delaware Corporation; SNAP, INC., a Delaware corporation, etc., et al., <br>     Defendants. | CV 22-3084 DSF (JCx) <br><br> ORDER GRANTING AIRBNB, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND GRANTING MOTION TO DISMISS (Dkt. 22) |

Airbnb Inc. moves to compel arbitration of Catherine Jackson's claims and to dismiss the claims of Salomes Monik Rengifo Jackson and Jonathan Antistian Rengifo Jackson, as Co-Personal Representatives of the Estate of Giselle Antistiana Jackson Rengifo, and Antistenes Rengifo Estupinan.

For the reasons state below, Airbnb's motion to stay and compel Ms. Jackson to arbitrate is GRANTED.  Airbnb's motion to dismiss the claims by the remaining Plaintiffs is GRANTED.

## I. Background

On May 18, 2020, seventeen-year-old Michael McGowan shot and killed seventeen-year-old Giselle Jackson Rengifo (Decedent) at 2721 Southwest 20th Street, Miami-Dade County, Florida (subject property). Dkt 1-1 (Compl.) ¶ 9.  The gun used  was bought on Snapchat, a SNAP, Inc. platform, and the subject property was an Airbnb rental property. Id.  Both Mr. McGowan and Decedent had been at the subject property

for "several days" prior, "openly engaging in criminal activity," "partying," drinking, doing drugs, and "maintaining weapons." ¶ 10.

## II. Legal Standard

### A.    Arbitration

"[T]he Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). "The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3, 4). The burden to prove that a matter should not be stayed and referred to arbitration is on the party opposing arbitration. Green Tree Fin. Corp. Alabama v. Randolph, 531 U.S. 79, 91 (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration"). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver [or] delay." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985).

### B.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a complaint must

"state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

## III. Discussion

### A.    Request for Judicial Notice

Plaintiffs request that the Court take judicial notice of five documents:

1. A public record [of] the City of Miami Police Department Calls for Service for the subject Airbnb property located at: 2721 Southwest 20th Street, Miami-Dade County, Florida for the time period of 6/1/2017-9/15/22. . . .

2. The Rental Agreement between O.M. Property Management, the property owner of the subject property and tenant Kip Matthew Desormeaux . . .

3. A copy of Defendant Airbnb's Global Party Ban prohibiting parties on Airbnb property listings obtained from: https://news.airbnb.com/airbnb-announcesglobal-party-ban/. . . .

4. A Copy of Defendant Airbnb's Responsible Hosting in the United States: https://www.airbnb.com/help/article/1376/responsible-hosting-in-the-united-states . . .

5. Miami-Dade County Emergency Order 09-20 entered on March 21, 2020, prohibiting any new bookings for short term vacation rentals to non-essential workers that was in effect at the time of the incident.

Dkt. 28-1 (RJN) at 1-2.  Airbnb opposes the request.  Dkt. 31-1.

The Court takes notice of documents one and five but declines to take notice of the other documents.  Fed. R. Evid. 201(b) allows courts to judicially notice adjudicative facts if they are "not subject to reasonable dispute."  These documents  here clearly are part of the Plaintiffs' response to the motion to dismiss section of Airbnb's motion.  When "the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal citation omitted).  There are two exceptions.  "First, a court may consider material which is properly submitted as part of the complaint . . . .  If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them."  Id.  (internal quotation marks omitted).  The second type of extrinsic evidence a court may consider on a 12(b)(6) motion is "matters of public record."  Id. at 689.

The Court finds that documents one (records of 911 calls about the subject property) and five (Miami-Dade County Emergency Order 09-20) are matters of public record and judicial notice is proper.  Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 866 n.1 (9th Cir. 2004) (finding that because a university was a state entity, its licensing records were a matter of public record and the court "may take judicial notice of the records of state agencies and other undisputed matters of public record").

The two Airbnb website links and the leasing contract, however, are not matters of public record and are not necessarily relied on by the complaint.  The complaint does not refer to these three documents— even implicitly.  "Plaintiffs cannot utilize [ ] documents to amend the complaint and defeat defendants' motions to dismiss."  Okla. Firefighters Pension & Ret. Sys. v. Ixia, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. Oct. 6, 2014) (declining to take judicial notice); see also Carillo v. Citimortgage, Inc., No. CV 09-02404 AHM (CWx), 2009 WL 3233534, at *3 (C.D. Cal. Sept. 30, 2009) ("The Court will not take judicial notice of Plaintiffs' exhibits, because the contents of the

4

exhibits are not alleged in the complaint and the complaint does not appear to necessarily rely on them.").

## B.  Arbitration

Airbnb moves to compel Catherine Jackson (Ms. Jackson), the Decedent's mother, to arbitrate her claims.  Airbnb argues that there is a valid and enforceable arbitration agreement that requires the question of arbitrability itself to be arbitrated.  Ms. Jackson counters that staying the case and compelling arbitration is inappropriate because this dispute is not within the scope of the Airbnb Terms of Service (TOS) she signed, Airbnb waived the right to arbitrate, and it is not in the interest of judicial economy to stay the case.[1]  The Court finds Ms. Jackson's arguments unpersuasive.

Where an arbitration agreement clearly delegates the question of arbitrability to the arbitrator there is no exception that allows the Court to address questions of arbitrability.  The Supreme Court made this abundantly clear in Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 527 (2019).  Prior to that decision, some courts used a "wholly groundless" exception "to block frivolous attempts to transfer disputes from the court system to arbitration."  Id. at 529.  But the Supreme Court found that where arbitrability is delegated to an arbitrator, federal courts cannot "short-circuit the process and decide the arbitrability question themselves" even "if the argument that the arbitration agreement applies to the particular dispute is 'wholly

---

[1] Beneath the surface of the parties' briefings is a disagreement about what law should apply.  Airbnb primarily relies on federal law, while Ms. Jackson's opposition cites only one federal case, but cites several California state cases and a section of the California Civil Procedure Code.  Compare Mot. at 4-8 with Opp'n at 1-6.  To be clear, the Federal Arbitration Act (FAA) pre-empts any state law governing arbitration.  Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1917-18 (2022); AT&T Mobility LLC, 563 U.S. at 343 ("Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives").

groundless.'" Id. at 527-78.  Rather "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." Id. "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.  But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id. at 530 (citing 9 U. S. C. § 2).

Here a valid arbitration agreement exits.  Ms. Jackson has not made any arguments that this arbitration agreement is an invalid contract. See AT&T Mobility LLC, 563 U.S. at 339 (FAA "permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract") (internal quotation marks omitted).  The only thing Ms. Jackson disputes is that Airbnb does not specify *which* valid agreement applies.  This argument holds no weight.  Ms. Jackson signed up for Airbnb and signed a TOS with Airbnb on September 24, 2019 (v.10).  Opp'n at 2.  On July 28, 2021, Ms. Jackson agreed to an updated Airbnb TOS (v.11).  Id. at 1.  Ms. Jackson signed this updated agreement after her daughter's death on May 18, 2020, but before this lawsuit—which she filed on May 5, 2022. Id.; Compl. at 18.  Ms. Jackson argues that Airbnb's motion to compel should be denied because it failed "to allege which arbitration agreement was enforceable at the time of the subject incident." Opp'n at 2.  The Court need not resolve which arbitration agreement applies. As pointed out by Airbnb, v.10 and v.11 contain exactly the same provision binding the parties to an arbitration agreement and delegating questions of arbitrability to the arbitrator.  Dkt. 31 (Reply) at 2 (citing Dkt. 22-12 (TOS v.10) § 19.4 and Dkt. 22-13 (TOS v.11) § 23.4).  Ms. Jackson cannot reasonably claim that she is not bound by either agreement.  There is no change to this Court's arbitration analysis if v.10 applies or v.11 applies.

The language in both TOS documents reads: "If there is a dispute about whether this Arbitration Agreement can be enforced or applies to our Dispute, you and Airbnb agree that **the arbitrator will decide that issue**." See TOS v.10 § 19.4; TOS v.11 § 23.4 (emphasis added).

This language clearly and unmistakably gives the arbitrator authority over the threshold question of arbitrability.  Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69-70 n.1 (2010) ("courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so") (cleaned up).

The remaining arguments about arbitration are questions for the arbitrator.  Ms. Jackson argues that she is only

> bound to arbitrate a claim arising out of, 'any use of the
> Airbnb Platform, Host Services, or any Content" thus the
> "plain language of the agreement renders the arbitration
> clause unenforceable as this case does not arise from
> Catherine Jackson's use of the Airbnb Platform, Host
> Services, or any Content, it arises from the use of an
> unknown third person.

Opp'n at 2-3 (internal citations omitted).  But this is clearly an arbitrability question.  In Henry Schein, Inc., the arbitration agreement applied to all disputes except a select few such as actions concerning injunctive relief.  139 S. Ct. at 528.  The suit in question sought injunctive relief in part and thus the parties disputed whether it fell within the arbitration agreement.  The Court decided that where arbitrability is delegated to the arbitrator "an arbitrator—not the court—ha[s] to decide whether the arbitration agreement applied to th[e] particular dispute."  Id.  Whether Ms. Jackson's claim is one that falls under the arbitration agreement is fundamentally an arbitrability question and is left for an arbitrator to decide.  Shivkov v. Artex Risk Sols., Inc., 974 F.3d 1051, 1065 (9th Cir. 2020) ("whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" is a "gateway question[] of arbitrability") (internal quotation marks omitted).

Ms. Jackson also argues Airbnb waived arbitration because Airbnb knew that Ms. Jackson intended to pursue legal action as early as September 21, 2021, but did not seek to compel arbitration until eleven months later.  Opp'n at 3-4.  This too is a question for the arbitrator.

"Questions of procedural arbitrability" are "presumptively for the arbitrator." <u>Las Vegas v. Mirage Casino-Hotel, Inc.</u>, 911 F.3d 588, 596 (9th Cir. 2018). Thus the "arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 84 (2002) (internal quotation marks omitted). Many courts have distinguished this Supreme Court precedent recognizing that allegations of delay or waiver that occur *after* filing litigation concern litigation conduct and are, therefore, an issue for the courts.[2] The allegations of delay and waiver here,

_____

[2] Courts interpreting <u>Howsam</u> find that post-litigation conduct waiver is still a question for the courts to decide. <u>Sabatelli v. Baylor Scott & White Health</u>, 832 Fed. Appx. 843, 848 (5th Cir. 2020) ("waiver of arbitration based on litigation conduct is an issue for the court, rather than the arbitrator, to decide."); <u>Ehleiter v. Grapetree Shores, Inc.</u>, 482 F.3d 207, 219 (3d. Cir. 2007) (finding that <u>Howsom</u> "[p]roperly considered within the context of the entire opinion . . . was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the NASD time limit rule at issue in that case, and not to claims of waiver based on active litigation in court. As the Appellate Division recognized, this latter type of waiver implicates courts' authority to control judicial procedures or to resolve issues . . . arising from judicial conduct."); <u>Madorskaya v. Frontline Asset Strategies, LLC</u>, 2021 U.S. Dist. LEXIS 164995, *35 n.9 (E.D.N.Y. Aug. 31, 2021) ("The Court is mindful that the Supreme Court has said, in dicta, that 'the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability.' <u>Howsam</u>, 537 U.S. at 84. Yet, despite this statement in <u>Howsam</u>, courts in this Circuit and elsewhere have continued to decide waiver disputes, particularly those that—like here—involve allegations of waiver due to litigation conduct.") (cleaned up); <u>Sheet Metal Workers Local No. 20 Welfare & Ben. Fund v. CVS Pharm., Inc.</u>, 540 F. Supp. 3d 182, 193 (D.R.I. May 11, 2021) (finding the Supreme Court in <u>Howsam</u> did not "alter [the] traditional rule that courts presumptively decide issues of litigation-conduct waiver."); <u>see, also</u>, <u>Tech. in P'ship v. Rudin</u>, 538 Fed. Appx. 38, 39 (2d. Cir. 2013).

however, are primarily based on Airbnb's attempts to engage in settlement conversations prior to the filing of the suit and a failure to comply with the arbitration agreement terms by failing to notify Ms. Jackson of an intent to arbitrate.  Opp'n at 3-4.  Those are arbitration procedure questions reserved for the arbitrator.

Airbnb's post-litigation conduct has not waived its right to arbitrate.  Waiver "is the intentional relinquishment or abandonment of a known right"; a party "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right."  Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713-14 (2022) (internal quotation marks omitted).  A "party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court."  Newirth v. Aegis Senior Cmtys., LLC, 931 F.3d 935, 938 (9th Cir. 2019).  Airbnb filed this motion to compel approximately three months after Plaintiffs filed this lawsuit .  Compl. at 18.  Airbnb has not yet filed an answer.  Airbnb's post-litigation conduct does not suggest that it intended to relinquish its right to arbitrate.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985) ("any doubts concerning the scope of arbitrable issues," including allegations of waiver or delay should "be resolved in favor of arbitration").

Ms. Jackson also asks this Court to deny the requested stay as a matter of public policy.  Because there are multiple claims by multiple plaintiffs, and the actions are occurring in different courts, Ms. Jackson argues that compelling arbitration could result in further differing outcomes and would not be in the interest of judicial economy.  These public policy arguments are unpersuasive.  There is a "national policy favoring arbitration" that the Court finds persuasive.  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

---

Airbnb's motion to stay Ms. Jackson's claims and compel arbitration is GRANTED.

## C.   Motion to Dismiss

The remaining Plaintiffs[3] fail to allege facts to support their negligence, gross negligence, and products liability claims against Airbnb.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013) ("Dismissal under Rule 12(b)(6) is proper when the complaint . . . fails to allege sufficient facts to support a cognizable legal theory") (internal citation omitted).

### 1.   Choice of Law

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits."  Coufal Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000).  California applies the governmental interest approach.  The first step of this approach requires determining whether "the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different" from California law.  McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 87-88 (2010).  "[I]f there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Id.  If a conflict exists, then the court "compares the nature and strength of the interest of each jurisdiction" to determine which "state's interest would be more impaired if its policy were subordinated to the policy of the other state."  Id.

The "burden rests on" the parties advocating another state's law "to show why their forum states have an interest in applying their law in the case at bar."  Certain Underwriters at Lloyd's v. Expeditors Int'l of Washington, Inc., 584 F. Supp. 3d 860, 876 (C.D. Cal. 2022).  And if "the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied, then the Court may properly find California law applicable without

---

[3] All future references to Plaintiffs exclude Ms. Jackson.

analyzing comparative impairment." Id. (internal quotation marks omitted).  Here, while the events happened in Florida, both parties apply California law.  Neither has argued that Florida law applies or that there is a conflict between California law and Florida law.  There is no need for the Court to perform a comparative analysis, California law applies.  Washington Mut. Bank, FA v. Superior Ct., 24 Cal. 4th 906, 919 (2001).

## 2. Negligence

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages."  Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1250 (2009).  Airbnb argues that the Plaintiffs have failed to allege that Airbnb owed a duty and failed to allege causation.  The Court agrees.  The negligence claim is dismissed. And because "California does not recognize a distinct common law cause of action for gross negligence apart from negligence," the gross negligence claim fails as well.  Jimenez v. 24 Hour Fitness USA, Inc., 237 Cal. App. 4th 546, n.3 (2015).

"Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . A duty of care may arise through statute or by operation of the common law."  Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905, 920 (2022) (internal quotation marks omitted).  Under California law, "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."  Cal. Civ. Code § 1714. But "it also is well established that, as a general matter, there is no duty to act to protect others from the conduct of third parties."  Delgado v. Trax Bar & Grill, 36 Cal. 4th 224, 235 (2005).  Here Michael McGowan, not Airbnb, pulled the trigger.  Airbnb had no duty to protect Decedent from Mr. McGowan's malfeasance.

There are common law doctrines, however, that may hold a party liable for the conduct of a third party.  For example, an affirmative duty

to protect against third-party conduct may arise where a party comes to the aid of another or where there is a special relationship. <u>Brown v. USA Taekwondo</u>, 11 Cal. 5th 204, 216 (2021). The California Supreme Court has established a two-step analysis to determine if one of these exceptions applies. First, there must be an exception to the no-duty-to-protect rule. Second, if an exception is found, the court then weighs the <u>Rowland</u> factors to see if a duty should be imposed. <u>Id.</u> at 212-13; <u>see</u> <u>Rowland v. Christian</u>, 69 Cal. 2d 108 (1968)). The <u>Rowland</u> factors are "a means for deciding whether to limit a duty derived from other sources." <u>Brown</u>, 11 Cal. 5th at 217. Put differently, the special relationship and negligent undertaking are exceptions that allow for a finding of duty where third party misfeasance would otherwise preclude one. Both exceptions are expansions of duty rules and must, in each case, pass muster under <u>Rowland</u> in order to apply. The <u>Rowland</u> test balances the following policy considerations:

> the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

<u>Id.</u> (citing <u>Rowland</u>, 69 Cal. 2d at 112-13). Plaintiffs' arguments fail at both steps. No exception applies here, and the <u>Rowland</u> factors preclude the finding of a duty.

"A special relationship between the defendant and the victim is one that gives the victim a right to expect protection from the defendant while a special relationship between the defendant and the dangerous third party is one that "entails an ability to control the third party's conduct." <u>Brown</u>, 11 Cal. 5th at 216 (internal quotation marks omitted). The existence of a special relationship with the perpetrator or victim "puts the defendant in a unique position to protect the plaintiff from injury. The law requires the defendant to use this

position accordingly." Id.  Classic examples of this relationship include parent to child, employer to employee, landlord to invitee, and common carrier to passenger.  Where the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties" California courts "have uniformly held the defendant owes no legal duty to the plaintiff." Id.

A special relationship may exist where the accused tortfeasor exercises control over a piece of land such that he is akin to a landowner.  Landowners owe a special duty to invitees on their land. Airbnb does not exercise sufficient control over the subject property to support finding a special relationship here.  Control over a property creates a duty where there is a "power to prevent, remedy or guard against the dangerous condition," which courts often construe as an ability to enact physical changes on a property.  Colonial Van & Storage, Inc. v. Superior Court, 76 Cal. App. 5th 487, 498 (2022). "[D]eriving a commercial benefit [is] not the dispositive factor relating to the issue of defendant's control" of land.  Id. at 499 (internal citation omitted).  Setting policies and providing a security patrol is not sufficient control to create a duty.  Univ. of So. Cal. v. Superior Court, 30 Cal. App. 5th 429, 449 (2018), overruled on other grounds by Brown, 11 Cal. 5th at 212.  And merely hosting the opportunity for the misconduct on one's land does not create a special relationship.  As California courts have found, "there are 'many commonplace commercial activities' that provide an opportunity for, and thus theoretically increase the risk of, criminal conduct by third parties." Doe No. 1 v. Uber Techs., Inc., 79 Cal. App. 5th 410, 428 (2022) (citing Sakiyama v. AMF Bowling Centers, Inc., 110 Cal. App. 4th 398, 409 (2003)).

> Countless bars and restaurants, for example, are open late and provide patrons with the opportunity to drink alcohol, become intoxicated, and then drive.  Rock concerts are advertised to and attended by teenagers who thereafter drive home, sometimes under the influence of alcohol and/or drugs.  Annual New Year's Eve parties routinely are celebrated until early morning hours, with partygoers

> driving home either impaired or extremely fatigued.  All-
> night parties, complete with a variety of alcoholic
> beverages, are an inescapable aspect of college life.  Courts
> have refused to hold business owners and hosts in these
> situations liable for negligence.

Sakiyama, 110 Cal. App. 4th at 409 (collecting cases).  In "cases against youth organizations that negligently provide the opportunity for an adult to molest a child, courts have analyzed the organization's liability for resulting harm under a paradigm of nonfeasance (failure to protect) and special relationships."  Uber Techs., Inc., 79 Cal. App. 5th at 428.  In sum, that an organization or business "creates an opportunity for criminal conduct against a plaintiff and thereby worsens the plaintiff's position does not render such criminal conduct a necessary component of the organization's actions—even when that conduct is foreseeable.  Providing such an opportunity does not constitute misfeasance triggering a duty to protect."  Id. at 428-29.

The Complaint has not alleged sufficient facts to support that there was a special relationship – either between Airbnb and Decedent or between Airbnb and McGowan.  At most, there are claims that Airbnb provides a platform for renting and sets policies for rentals.  Compl. ¶ 13.  This is insufficient.  There is one naked allegation that Airbnb "owed decedent several duties to decedent as an operator/manager of the subject property."  Id. ¶ 30.  But there are no allegations fleshing out Airbnb's "operator/manager" role that would plausibly allege Airbnb exerted control over the subject property such that a special relationship exists.  Esposito v. Airbnb Action, LLC, No. 5:20-CV-5204, 2022 WL 2980700, at *5 (W.D. Ark. July 27, 2022), although applying Arkansas law, is instructive.  The case involved a lawsuit against Airbnb for a burglary and assault that took place on an Airbnb property.  The plaintiffs argued that there was a special relationship akin to a "innkeeper/guest or business owner/invitee."  Id.  But the court found neither analogy convincing because Airbnb did not control the land and did not "own[] or manage[] any of the rental properties advertised on its online platform."  Id.

There was also no negligent undertaking. "To establish a duty of care to [Decedent] based on the negligent undertaking doctrine," Plaintiffs must first show that Airbnb "undertook to render services" to Decedent and that those "services were of the kind [Airbnb] should have recognized as necessary for the protection of third persons." Barenborg v. Sigma Alpha Epsilon Fraternity, 33 Cal. App. 5th 70, 83-84 (2019). Plaintiffs must then show that Airbnb's failure to exercise reasonable care in the undertaking either "increased the risk of harm beyond what existed without the undertaking," or that others would have taken on the undertaking or stepped in, but relied instead on Airbnb. Id. The Plaintiffs have not plausibly alleged a negligent undertaking. They claim that Airbnb "undertook measures to protect guests and third parties from crime" by "prohibiting partying, retain[ing] the right to conduct investigations and terminate listings," reviewing "what the host posted and edit[ing] the listing," and "require[ing] local compliance with law and ordinances." Opp'n at 15. But it is not clear that any of these actions were done negligently. For example, Plaintiffs do not suggest that incorrect information was posted thereby increasing the risk of danger. Plaintiffs instead seem to suggest that this undertaking was negligent because Airbnb did not do more. Id. But the "scope of any duty assumed depends upon the nature of the undertaking. . . . For example, merely because a supermarket chooses to have a security program that includes a roving security guard does not signify that the proprietor has assumed a duty to protect invitees from third party violence." Id. (internal quotation marks omitted). None of Airbnb's actions increased risk, nor did they stop others from stepping in. The facts alleged do not support that Airbnb saw a risk, stepped in, and, in doing so, increased the risk of harm.

Even if there were some exception to the limitations on duty that applied here, the Rowland factors do not support a finding of duty. Specially, (1) the foreseeability of the crime was low, (2) the connection between Airbnb's conduct, and the injury is virtually nonexistent, and (3) the burden of preventing this sort of incident in the future is high. Brown, 11 Cal. 5th at 217 (citing Rowland, 69 Cal. 2d at 112-13).

This crime was not reasonably foreseeable.  The remaining Plaintiffs claim that Airbnb is "abundantly aware of the incessant criminal activity taking place in all areas of its operations" and that "[c]rime is so foreseeable at AIRBNB properties that it pays an 'elite trust-and-safety team' to cover up the crimes."  Compl. ¶ 23.  To support the claims that crime is foreseeable and frequent, the Complaint points to two past crimes at Airbnb properties, one in 2015 in California and one at some other point in New York.  Compl. ¶¶ 19-20.  Per Plaintiff's request, this Court has also taken judicial notice of the record of police calls concerning the subject property.  This call log shows that there was a call concerning burglary at the property in 2018, a disturbance call in 2019, and a conduct call five days before Decedent's death.  Dkt. 28-3.

None of this makes Decedent's death foreseeable.  "[I]t is difficult if not impossible in today's society to predict when a criminal might strike."  Wiener v. Southcoast Childcare Centers, Inc., 32 Cal. 4th 1138, 1150 (2004).  Plaintiffs have not alleged any connection to these other crimes—i.e., they have not alleged that the other Airbnb crimes resulted because of a similar policy issue or that the burglary on the property revealed security flaws that contributed to Decedent's death.  These other incidents also occurred years earlier than Decedent's death.  It would have taken something near the level of psychic powers to foresee the May 18, 2020, events at the subject property even with knowledge of these other crimes.  See Jefferson v. Qwik Korner Market, Inc., 28 Cal. App. 4th 990, 996 (1994) ("on a clear judicial day, you can foresee forever" but if "the law imposed a duty to protect against every conceivable harm, nothing could function").  The facts pleaded simply do not support the conclusion that Decedent's death was foreseeable.

Additionally, there is no meaningful connection between the alleged failures of Airbnb and the incident at the subject property.  Most of the allegations of Airbnb's failures are conclusory claims that the app is "negligently designed" and that Airbnb took no "reasonable safety measures."  See, e.g., Compl. ¶¶ 26-29.  Where the Complaint provides specific allegations of Airbnb's failures, the failures are unrelated to the tragedy at issue.  For example, Plaintiffs state Airbnb failed to require

renters to provide photo identification, but the Complaint never specifies who rented the subject property or that such a policy would have had any impact on the situation. Compl. ¶ 32. Plaintiffs also allege that Airbnb was negligent by not requiring owners to promulgate rules "prohibiting the consumption of drugs" or "prohibiting the consumption of alcohol by minors" on the property. Compl. ¶ 34. These are things that are already illegal. Airbnb is not responsible for not outlawing illegal conduct. Airbnb is responsible only if it encourages it. Sakiyama, 110 Cal. App. 4th at 408 ("Unlike the radio contest, in which hazardous driving by teenagers was a necessary component of the game, the rave party was simply a party attended by teenagers. While drugs may have been anticipated, the teenagers did not need to use drugs to attend the party. AMF did not promote drug use," therefore "AMF had no such direct link to the unfortunate accident in this case"). The Complaint also alleges that Airbnb should have made rules or encouraged landowners to make rules preventing minors from being on the property unsupervised. Compl. ¶¶ 34-36. The connection between unsupervised minors and the events that occurred is tangential at best. The Complaint does not plausibly allege that Airbnb's alleged failures contributed to Decedent's death.

"Foreseeability is balanced against the burden of the duty to be imposed. Where the burden of prevention is great, a high degree of foreseeability is usually required." Melton v. Boustred, 183 Cal. App. 4th 521, 532 (2010) (internal quotation marks omitted). The burden that Plaintiffs want to place on Airbnb is great. For example, Plaintiffs state that Airbnb should "ensure persons do not bring guns and weapons onto subject premises" and should "prevent criminal activity" on Airbnb properties. Compl ¶ 31. But the foreseeability of teenagers mishandling a firearm at the subject property was low. Plaintiffs have not pointed to a similar incident or issue at the subject property—or any Airbnb property. And the California Supreme Court has found that "the burden of requiring a landlord to protect against crime everywhere has been considered too great in comparison with the foreseeability of crime occurring at a particular location to justify imposing an omnibus duty on landowners to control crime." Wiener, 32

Cal. 4th at 1150 (internal quotation marks omitted) (finding pre-meditated murder committed by driving into children at a pre-school was not foreseeable because there had been no similar prior incidents, rejecting the lower court's reasoning that it was foreseeable because there had been a prior traffic accident where a car also drove onto the property, and finding the landlord owed no duty "to create a fortress to protect the children"); see also Melton, 183 Cal. App. 4th at 529-32 (finding that a homeowner was not responsible for an assault on his property after he sent out an open invitation to his house on MySpace because the foreseeability was minimal but the burden to prevent the assault would have been high).

Salomes Monik Rengifo Jackson, Jonathan Christian Rengifo Jackson, and Antistenes Rengifo Estupnian's claims of negligence and gross negligence are DISMISSED with leave to amend.

### 3.      Products Liability

Airbnb disputes the products liability claims because Airbnb is "a marketplace" and not a product.  Mot. at 18.  The Court agrees.  A "products liability claimant must meet a condition precedent to successfully maintain the action.  He or she must show that the object or instrumentality claimed to be defective was in fact a 'product' as defined or contemplated by the Restatement of Torts, legislation or case law." Brooks v. Eugene Burger Management Corp., 215 Cal. App. 3d 1611, 1626 (1989).  "A product is tangible personal property distributed commercially for use or consumption . . . .  Services, even when provided commercially, are not products."  Restatement (Third) of Torts, Products Liability, § 19 (Am. L. Inst. 1998).  The California Supreme Court has echoed the Restatement and has found that "strict products liability law does not apply to services" and "those who sell services [are] not liable in absence of negligence or intentional misconduct."  Jimenez v. Superior Court, 29 Cal. 4th 473, 479 (2002) (internal quotation marks omitted) (emphasis added) ("law of negligence, not strict liability, governs services . . . .");  Merrill v. Navegar, Inc., 26 Cal. 4th 465, 470 (2001) (the purpose of products liability is to hold liable "those who supply goods or products for the use

18

of others to purchasers, users, and bystanders for losses resulting from defects in those products"). Airbnb is a platform that connects users; it is more akin to a service than to a product. Jane Doe No. 1 v. Uber Technologies, Inc., 79 Cal. App. 5th 410, 419 (2022) ("the court concluded the Uber app was not a product, and thus a products liability theory of recovery was not legally viable.").

The cases cited by Plaintiffs are not persuasive. Plaintiffs first argue that the Ninth Circuit recognized a products liability claim in Lemmon v. Snap, 995 F.3d 1085 (9th Cir. 2021). But there the circuit addressed only whether Snap was immune to liability under the Communications Decency Act, 47 U.S.C. § 230(c)(1). Id. at 1087. The circuit declined to address whether there was a failure to plead a negligent design claim, stating that "the district court dismissed the Parents' amended complaint based entirely on the CDA, and we refrain from deciding an issue that the district court has not had the opportunity to evaluate." Id. at 1095 (internal quotation marks omitted). On remand, the lower court analyzed negligence claims that were based on the design. The analysis was an ordinary negligence analysis, not a products liability analysis. Lemmon v. Snap, Inc., No. CV 19-4504-MWF (KSX), 2022 WL 1407936, at *5 (C.D. Cal. Mar. 31, 2022) (denying a motion to dismiss the negligent design theories because the court "previously determined that Plaintiffs have sufficiently alleged a duty," and the court was satisfied the "allegations, accepted as true, are sufficient to allege causation").

The second case the remaining Plaintiffs rely on is equally unpersuasive. In Bolger v. Amazon.com, LLC, 53 Cal. App. 5th 431, 440 (2020), the court found that even though Amazon was not "the seller of the replacement battery," its involvement in shipping, marketing, producing, and ensuring the safety of the product made it akin to a retailer and it was still responsible when the end product was not safe. There was still a tangible product for which there was liability. Here Plaintiffs "are not seeking to hold Defendant liable solely based on the 'house' as the end product but are pursuing a negligent design theory based on the design of the platform itself." Opp'n at 18. There are no allegations in the complaint that there was

an issue with the house itself—only allegations that the service or platform was negligently designed.  Bolger is not analogous.

The remaining Plaintiffs' product liability claim is DISMISSED without prejudice.

* * *

For the foregoing reasons, Airbnb's motion to stay Ms. Jackson's case and compel arbitration is GRANTED.  Airbnb's request to dismiss the negligence and product liability claims of Salomes Monik Rengifo Jackson and Jonathan Christian Rengifo Jackson as representatives of the decedent's estate and Antistenes Rengifo Estupnian is GRANTED.[4] They are granted leave to amend the Complaint in conformity with this Order if they can do so consistent with Rule 11 of the Federal Rules of Civil Procedure.  An amended complaint may be filed and served no later than December 6, 2022.  Failure to file an amended complaint by that date will waive their right to do so and the Complaint will be dismissed with prejudice as to them.  If they choose to file an amended complaint, they should carefully consider the other issues raised by Airbnb's motion and amend their claims where appropriate.  Plaintiffs must provide a redlined version of the amended complaint to the Court's generic chambers email.

IT IS SO ORDERED.

Date: November 4, 2022

Dale S. Fischer
United States District Judge

---

[4] Because all claims of the remaining Plaintiffs have been dismissed, the Court declines to address at this time causation issues with the claims, the request to strike punitive damages, or the request to stay the case until the completion of other proceedings.